**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JANNEASE JOHNSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-2944 (RC) |
| | : | | |
| v. | : | Re Document No.: | 58 |
| | : | | |
| DISTRICT OF COLUMBIA, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

DENYING DEFENDANTS QUINCY BOOTH'S AND WANDA PATTEN'S MOTION FOR RECONSIDERATION

### I.  INTRODUCTION

In March and April of 2020, Sergeant Jannease Johnson worked for the D.C. Department of Corrections ("DOC") and was a regular and vocal critic of DOC's early response to the COVID-19 pandemic.  She alleges that, because of her criticism, Defendants the District of Columbia, DOC Director Quincy Booth, and DOC Deputy Director of Operations Wanda Patten demoted, reassigned, and ultimately fired her.  Believing that Defendants' actions were retaliatory, and that they violated both the D.C. Whistleblower Protection Act and the First Amendment, Johnson filed this lawsuit.

Following an extended period of discovery, the parties cross-moved for summary judgment.  Relevant here, Defendants Booth and Patten argued that Johnson had failed to establish a genuine dispute of material fact regarding whether their decision to terminate her violated the First Amendment.[1]  They further argued that, even if their actions were

---

[1] From this point forward, "Defendants" will be used to refer only to Booth and Patten.

impermissibly retaliatory, they were entitled to qualified immunity.  The Court disagreed and, accordingly, denied Defendants' motion insofar as it sought summary judgment on those grounds.  Mem. Op. at 33–50, ECF No. 57.

Defendants now move for reconsideration of the Court's order.  For the reasons set forth below, Defendants' motion is denied.

## II.  BACKGROUND

The Court's summary judgment opinion described the background of this case in detail.  *See id.* at 2–8.  The ensuing discussion will therefore provide only an abridged overview of the factual and procedural context that is necessary to resolve the instant motion.

Johnson began her career at DOC in 1992.  *Id.* at 2.  By 2020, she held leadership positions in both the D.C. Jail and the Fraternal Order of Police Department of Corrections Labor Committee (the "Union").  *Id.*  In these capacities, Johnson witnessed first-hand DOC's initial response to the burgeoning COVID-19 pandemic and its impact on health, safety, and operations at the Jail.  *Id.*  She and other Union members were significantly dissatisfied by DOC's allegedly ineffective response and, over the course of April 2020, they criticized DOC's actions and the conditions at the Jail in multiple venues.  *Id.* at 2–6.

By April 22, the conditions were allegedly so bad that inmates resorted to protest.  *Id.* at 5.  The next day, an email describing the incident was distributed over a confidential email listserv to which Johnson had access.  *Id.*  Johnson forwarded the email to the Union's attorneys who, in turn, sent the email to a local news reporter.  *Id.*  Seeking comment, the reporter reached out to DOC's Director of Strategic Communications, Keena Blackmon.  *Id.*  Blackmon relayed the request to Defendant Patten who quickly identified a list of ways in which Johnson had violated DOC policy by sharing the initial email.  *Id.*  Purportedly chief amongst her (and

others') concerns was the fact that the email Johnson shared contained confidential information relating to the April 22 incident and inmate health. *Id.* at 6–7. On April 24, DOC opened an investigation into Johnson's email usage. *Id.* at 6. The investigation concluded on May 14. *Id.*

In the intervening period, Johnson continued to publicize her displeasure concerning DOC's response to the pandemic. On April 28, a Union attorney notified Blackmon—who then notified Patten—that Johnson intended to sit for an interview with a local news network. *Id.* On May 1, the network published an article—which included excerpts from Johnson's interview—criticizing DOC's response to COVID. *Id.*

On May 29, Patten served Johnson with notice that DOC planned to fire her. *Id.* at 6–7. DOC submitted Johnson's proposed termination to a hearing officer. *Id.* at 7. The hearing officer was unconvinced that termination was warranted and, instead, recommended DOC reprimand or suspend Johnson. *Id.* Unpersuaded, Defendant Booth asked the hearing officer to reconsider. *Id.* The hearing officer did so, determined that DOC's decision to fire Johnson was reasonable, and issued a revised recommendation. *Id.* at 7–8. DOC formally terminated Johnson on August 21. *Id.* at 8.

Johnson filed a lawsuit in D.C. Superior Court less than two weeks later. *Id.* Her complaint alleged that Defendants impermissibly retaliated against her in violation of the D.C. Whistleblower Protection Act and the First Amendment. *Id.* Defendants removed to this Court and the case eventually proceeded to summary judgment. *Id.* The Court denied Johnson's motion for summary judgment, and it granted in part and denied in part Defendants' cross-motion. *Id.* at 53. Relevant here, the Court denied Defendants' motion insofar as it sought summary judgment on Johnson's First Amendment claim. *Id.* at 44. The Court explained that a reasonable jury could find that Defendant Patten's decision to fire Johnson was motivated by

3

retaliatory animus stemming from Johnson's late-April interview with a local news network. *Id.* at 41–42. Separately, the Court denied Defendants' motion to the extent it invoked the doctrine of qualified immunity as a shield to Johnson's allegations. *Id.* at 44–50.

It is these aspects of the Court's summary judgment opinion that Defendants now ask the Court to reconsider. *See generally* Mem. of P. & A. in Supp. of Defs. Booth and Patten's Mot. for Recons. ("Defs.' Mot."), ECF No. 58. Johnson opposes reconsideration, *see* Pl.'s Opp'n to Defs. Booth and Patten's Mot. for Recons., ECF No. 59, and Defendants have filed a reply, *see* Defs. Booth and Patten's Reply in Supp. of Mot. for Recons. ("Defs.' Reply"), ECF No. 60. Defendants' motion is thus ripe for review.

### III.  LEGAL STANDARD

Rule 59(e) permits a party to file a motion to "alter or amend a judgment" within 28 days of the entry of that judgment.[2] Fed. R. Civ. P. 59(e). Rule 59(e) motions are "disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Off. of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001); *see also Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998). A court must grant a motion to alter or amend a judgment only: "(1) if there is an 'intervening change of controlling law'; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to 'correct a clear error or prevent manifest injustice.'" *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)); *see also Solomon v. Univ. of S. Cal.*, 255 F.R.D. 303, 305 (D.D.C. 2009). Relief under

---

[2] A motion for reconsideration of a court order denying qualified immunity is properly brought under Rule 59(e). *See Hanson v. Shubert*, 968 F.3d 1014, 1018 (9th Cir. 2020); *see also Liff v. Off. of the Inspector Gen. for the U.S. Dep't of Lab.*, No. 14-cv-1162, 2016 WL 4506970, at *3–4 (D.D.C. Aug. 26, 2016).

Rule 59(e) is not appropriate when the moving party seeks to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Niedermeier*, 153 F. Supp. 2d at 28 (internal citation and quotation marks omitted); *see also Turner v. U.S. Capitol Police*, No. 12-cv-45, 2014 WL 169871, at *1 (D.D.C. Jan. 16, 2014). The party seeking reconsideration bears the burden of establishing that relief is warranted. *See Zuza v. Off. of the High Representative*, No. 14-cv-1099, 2016 WL 447442, at *1 (D.D.C. Feb. 4, 2016).

### IV.  ANALYSIS

In seeking reconsideration, Defendants do not appear to contend that there has been an intervening change of controlling law or that new evidence has become available. *See Leidos*, 881 F.3d at 217. Defendants instead argue that the Court clearly erred (1) in finding a genuine dispute of material fact regarding whether Johnson's interview was a substantial or motivating factor in Defendant Patten's decision to fire her, Defs.' Mot. at 7–8, and (2) in denying qualified immunity to both Defendants, *id.* at 8–13. They thus face a tall task: "Rule 59(e)'s 'clear error' standard is a 'very exacting standard.'" *StimLabs, LLC v. Becerra*, 651 F. Supp. 3d 56, 59 (D.D.C. 2023) (quoting *Bond v. U.S. Dep't of Just.*, 286 F.R.D. 16, 22 (D.D.C. 2012)). "[T]he bar for finding 'clear error' under Rule 59(e) is higher than that for granting summary judgment under Rule 56," *Atlas Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 453 F. Supp. 3d 1, 6 (D.D.C. 2020), and a court "should have a clear conviction of error before finding a final judgment was predicated on clear error," *StimLabs, LLC*, 651 F. Supp. 3d at 59 (quoting *Bond*, 286 F.R.D. at 22). Mistakes warranting reconsideration are only those mistakes that are so "dead wrong" that they strike the reader "as erroneous 'with the force of a five-week-old, unrefrigerated dead fish.'" *Cable News Network, Inc. v. F.B.I.*, 401 F. Supp. 3d 187, 193

(D.D.C. 2019) (first quoting *Lardner v. F.B.I.*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012); and then quoting *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 78 (D.D.C. 2013)).

Defendants have not identified mistakes of that sort. For the most part, they have not identified mistakes at all; their motion is simply a blatant attempt to relitigate issues that have already been decided against them.

### A. Merits of First Amendment Retaliation Claim

Defendants first argue that the Court erred in concluding that a reasonable jury could find a causal link between Johnson's late-April interview and Patten's decision to fire her. Defs.' Mot. at 7–8. In doing so, Defendants regurgitate the same arguments and cite the same evidence on which they relied in moving for summary judgment.[3] *Compare* Defs.' Mot. at 7–8, *with* Defs.' Mot. Summ. J. ("Defs.' MSJ") at 22–23, ECF No. 46. They argue that Patten's sworn declaration conclusively establishes that she (and other DOC supervisors) had decided to fire Johnson at some point between April 23 and April 27—at least a day before Patten learned that Johnson had decided to sit for an interview. *See* Defs.' Mot. at 7–8. That is significant because, absent evidence from which a reasonable juror could conclude that Patten had not, in fact, decided to terminate Johnson just days before hearing about the interview, a reasonable juror would not be able to find that the interview was a substantial or motivating factor in Patten's decision. Mem. Op. at 41–42; *see also Wang v. Wash. Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 83 (D.D.C. 2016).

As the Court has already explained, there *is* evidence from which a rational finder of fact could conclude that Patten had not reached a determination on Johnson's fate by April 28. Mem.

---

[3] This alone provides a sufficient basis on which to deny Defendants' motion for reconsideration. *See Leidos*, 881 F.3d at 217.

6

Op. at 42.  For one thing, although Patten testified that she discussed Johnson's actions with Booth and Deputy Director Gitana Stewart-Ponder between April 23 and April 27, Patten's declaration does *not* state that the parties discussed terminating Johnson in these conversations.[4]  *See* Defs.' Ex. 5, Decl. of Wanda Patten ¶¶ 9–10, ECF No. 46-2.  Moreover, there is evidence that Patten did not receive an "initial draft" of Johnson's "removal paperwork" until May 5, 2020—a week *after* receiving notice of the interview.  *Id.* ¶ 20.  Additionally, Patten did not inform Johnson that DOC planned to terminate her until May 29 or May 30, *id.* ¶¶ 26–27; Pl.'s Ex. 47, ECF No. 44-10, and DOC did not finalize Johnson's removal until August, Mem. Op. at 42.[5]

In light of this evidence, this is not a case in which "one party [has] present[ed] relevant evidence that [the] []other party does not call into question factually."  *See* Defs.' Mot. at 8 (quoting *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016)).  Nor is it a case in which the Court made improper "credibility determinations" or attempted to "weigh the evidence."  *See Johnson*, 823 F.3d at 705.  Instead, it is a case in which both Johnson and Defendants have presented sufficient evidence from which a reasonable jury could find *either* that Patten had decided to fire Johnson before April 28 *or* that she did not decide to do so until after learning of

---

[4] In their reply, Defendants attempt to provide further detail on the chain of events preceding Johnson's termination.  They explain that "Patten proposed Plaintiff's termination, Deputy Director Gitana Stewart-Ponder approved Plaintiff's termination, Human Resources Specialist Shawnnell Barnett prepared the paperwork, and Booth approved the proposed termination."  Defs.' Reply at 2 (citing Defendants' responses to Johnson's interrogatories).  This, of course, proves nothing about the *timing* of these decisionmakers' actions or the point by which they decided to fire Johnson.  *See* Mem. Op. at 42

[5] Though not mentioned in the Court's summary judgment opinion, the hearing officer's initial decision provides further evidence from which a reasonable jury could find that Patten decided to fire Johnson after April 27.  The very first sentence of that decision states: "Removal of Jannease Johnson . . . , was proposed by Wanda Patten, on June 3, 2020."  Pl.'s Ex. 49 at 1, ECF No. 44-10.

Johnson's interview. The Court was therefore correct to deny Defendants summary judgment on Johnson's First Amendment retaliation claim.

### B. Qualified Immunity

Defendants' objection to the Court's denial of qualified immunity fares no better. In its opinion, the Court determined that, in the specific context of this case, no reasonable official in Defendants' position could have concluded that the government's interest in protecting confidential information outweighed Johnson's "significant interest in disclosing the worsening conditions at the D.C. Jail and the health threats to inmates and staff resulting from DOC leadership's failure to mitigate the situation." Mem. Op. at 46–49. And because the balance of these interests tipped so heavily in Johnson's favor, the Court further concluded that no reasonable official in Defendants' position could have thought that firing Johnson for publicly airing these concerns was lawful. *Id.* at 48–49. It therefore held that Defendants were not entitled to qualified immunity. *Id.* at 50.

Now, Defendants contend that the Court balanced the wrong interests. *See* Defs.' Mot. at 8–10. They argue that, instead of weighing Johnson's general interest in shedding light on the worsening conditions in the D.C. Jail against Defendants' interest in shielding confidential information from disclosure, the Court should have weighed Johnson's much narrower interest in disclosing confidential information against Defendants' interest in protecting the same.[6] *Id.* at

---

[6] In a footnote, Defendants separately argue that—in assessing how a reasonable official would weigh the relevant interests—the Court should have given more weight to "DOC's 'substantial interests in disciplining [Johnson] for her unauthorized leak'" of information. Defs.' Mot. at 9 n.1 (quoting *Breiterman v. U.S. Capitol Police*, 15 F.4th 1166, 1177 (D.C. Cir. 2021)). Defendants neglected to raise this point in moving for summary judgment, *see* Defs.' MSJ at 23–25, and now do so only in a footnote, *see CTS Corp. v. E.P.A.*, 759 F.3d 52, 64 (D.C. Cir. 2014) ("A footnote is no place to make a substantive legal argument . . . ; hiding an argument there and then articulating it in only a conclusory fashion results in forfeiture."); *see also Elec. Priv. Info. Ctr. v. I.R.S.*, 261 F. Supp. 3d 1, 13 (D.D.C. 2017) (similar). Nevertheless, the Court agrees that

8

9–10. Defendants do not cite—and the Court has not found—any authority for the proposition that Johnson's interests must be so narrowly construed.

Moreover, Defendants' argument is largely based on the premise that, when they decided to fire Johnson, Defendants had no knowledge that Johnson had any broader, health-and-safety-based interests in disclosing the conditions at the Jail. *See id.* at 9. But as just explained, insofar as Defendant Patten is concerned, a reasonable jury could conclude that she was aware of Johnson's broader interests before she decided to fire her. *See supra* Part IV.A. As for Defendant Booth, though Defendants are correct that there is no evidence that Booth ever had personal knowledge of Johnson's late-April interview, Mem. Op. at 40–41, there *is* evidence from which a reasonable jury could find that Booth was aware of Johnson's broader interests by the time he approved her termination, *see id.* at 48–49. For example, the hearing officer's initial decision—of which Booth does not dispute he had knowledge, *see* Defs.' Ex. 4, Decl. of Quincy Booth ¶ 15, ECF No. 46-2—makes clear that Johnson was motivated to speak out by DOC's alleged failure to adequately address the emergency posed by the pandemic and the concomitant risk to the health and safety of Jail staff, *see* Pl.'s Ex. 49 at 6–8, ECF No. 44-10.

Defendants' remaining arguments do not alter the calculus. Defendants argue that they had a "good faith, reasonable belief[]" that Johnson's actions "violated laws, regulations, and policies that require DOC to protect [inmate health] information." Defs.' Mot. at 11. They also argue that "the First Amendment does not provide employees 'with *carte blanche* authority to disclos[e] any and all confidential agency information' to an attorney, especially where

---

it should have more explicitly addressed DOC's disciplinary interest in its qualified immunity analysis. However, the Court *did* address that interest in conducting its initial *Pickering* balancing, *see* Mem. Op. at 36–39, and therefore concludes that any error in its qualified immunity analysis is not the type of clear error that warrants reconsideration, *see Atlas Air*, 453 F. Supp. 3d at 6; *Cable News Network*, 401 F. Supp. 3d at 193.

disclosures to that attorney are *de facto* releases of public information." *Id.* (quoting *Jacobs v. Schiffer*, 204 F.3d 259, 265 (D.C. Cir. 2000)). Defendants made the same arguments nearly verbatim in moving for summary judgment. Defs.' MSJ at 24–25. The Court considered those arguments then, Mem. Op. at 46, and sees no reason to retread the same ground here, *see Banks v. Booth*, 518 F. Supp. 3d 57, 63 (D.D.C. 2021) ("A motion under . . . Rule 59(e) is not simply an opportunity to reargue facts and theories upon which a court has already ruled." (internal quotation marks omitted)).

      Finally, Defendants take issue with the Court's finding that they were put on notice that the *Pickering* balance weighed heavily against them. Defs.' Mot. at 11–12. In doing so, they seem to argue that the Court gave too much weight to the hearing officer's initial conclusion that Defendants' planned termination of Johnson was "not 'reasonable punishment.'" *See id.* at 11 (quoting Mem. Op. at 49). The Court's analysis, however, focused on far more than the fact that Defendants were "put on notice that the [*Pickering*] balance weighed against them." Mem. Op. at 49. In fact, that point simply "buttressed" the Court's conclusion that "what little interest Defendants had in protecting the release of confidential medical information was so heavily outweighed by Johnson's countervailing interest in shedding light on the deplorable conditions in the D.C. Jail and the ongoing threat to inmate and staff safety that no reasonable official in Defendants' position could have concluded that the *Pickering* scales would tip in DOC's favor." *Id.*; *see also id.* at 47–49 (discussing the evidence leading to this conclusion). That being so, any error in the Court's assessment of the extent to which the hearing officer's initial decision put Defendants on notice that the *Pickering* balance did not weigh in their favor—and, to be clear, the Court is not convinced that there was such an error—is not a mistake of sufficient magnitude that it necessitates reconsideration.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration (ECF No. 58) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 19, 2024                                                                                  RUDOLPH CONTRERAS
                                                                                                                          United States District Judge